KENNETH R. EPPERS *et al.*, Plaintiffs-Appellees, v. FIRST NATIONAL BANK OF LAKE FOREST, as Trustee, Defendant-Appellant.

Second District No. 2—85—0599

Opinion filed January 14, 1987.

Albert S. Salvi, of Salvi & Salvi, of Lake Zurich, for appellant.

V. Diane Mueller, of Bishop & Callas, of Crystal Lake, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Defendant, First National Bank of Lake Forest, as trustee, appeals from an order of the trial court of Lake County which permanently enjoined it from seeking forfeiture of an installment contract between itself and plaintiffs for the purchase of real property and from filing any action for possession of the subject real property.

Defendant contends on appeal that the trial court erred in determining that plaintiffs had a right to cure a breach of contract after receiving notice of defendant's intent to declare a forfeiture and that the complaint fails to adequately state a basis for injunctive relief.

First National Bank of Lake Forest (Seller) entered into an installment contract with Kenneth and Diane Eppers and Arthur Johns (Buyers) for the sale of commercial realty. The contract provided, among other things, that Buyers would (1) pay all taxes due on the realty before accrual of any penalty; (2) keep all buildings on the property insured in the Seller's name; and (3) keep improvements on the premises in good repair and not commit waste. The contract also contained a forfeiture clause whereby, upon Buyers' breach of any contractual conditions, Seller could, at its option, declare the contract forfeited, retain all payments previously made by Buyers, and have the right to reenter and take possession of the property.

Subsequently, Buyers failed to pay the 1982 and 1983 real estate taxes on the property before penalties accrued and also failed to keep the buildings on the property insured as agreed. As of February 12, 1985, taxes were in arrears in the amount of approximately $3,500, and insurance premiums were owed in the amount of $639. By that time Buyers had made 66 monthly payments against principal and interest on the property, thus reducing the purchase price of $252,000 to a balance of $181,016.

On February 12, 1985, Seller directed to Buyers notice of intent to declare forfeiture and notice of intent to file a forcible entry and detainer suit with demand for possession. Buyers tendered the following amounts by check to Seller's agent in order to cure the default: $2,500 on February 12, 1985, $639 on February 15, 1985, and $1,000 on February 19, 1985. Seller's agent retained the checks but did not cash them.

On March 18, 1985, Seller served Buyers with a declaration of forfeiture and a demand for possession of the property. The declaration was recorded on March 27, 1985, the same day Buyers filed their complaint for injunctive and other relief. After a bench hearing on the merits of the complaint, the court found that the evidence would support findings that from time to time the Buyers made late payments toward the mortgage, taxes, and insurance and that Buyers had in fact defaulted under the contract with regard to taxes and insurance premiums. The court also found, however, that Buyers had cured the default, within 30 days of receipt of the notice of intent to declare forfeiture, by paying the amounts of the arrearages to the Seller.

The court then determined that the Buyers had met all of the req-

uisites for injunctive relief and enjoined the Seller from further pursuing any forfeiture of the installment contract, any forcible entry and detainer action, and any action which would cloud title to the subject property. The court also ordered the Seller to accept the payments which had been tendered by Buyers as a cure of default. The Seller then filed this appeal.

Seller first contends that the trial court erred when it determined that Buyers had 30 days after receipt of his notice of intent in which to cure defaults under the contract. Seller correctly notes that the contract did not, by its terms, provide for a cure period. The notice, according to Seller, was given merely to comply with (1) a rule of equity that a purchaser must be given a reasonable warning of a seller's intention to declare a forfeiture, and (2) the Forcible Entry and Detainer Act (the Act) (Ill. Rev. Stat. 1983, ch. 110, par. 9—101 *et seq.*) requirement that a defaulting buyer be given 30 days' demand for possession (Ill. Rev. Stat. 1983, ch. 110, par. 9—104.1(a)). The purpose of the notice requirements, as asserted by Seller, is not to give the buyer a time in which to cure, but merely to allow the buyer a reasonable time to vacate or request additional time. Seller insists that when a defaulting buyer wishes to redeem, he may do so only pursuant to section 9—110 of the Act which authorizes the trial court to stay enforcement of judgments in forcible entry and detainer cases, thus giving a purchaser a grace period in which to cure any default. This relief is available with respect to the same contract only once in a five-year period.

Buyers rely on several provisions of the Act to support their contention that they were entitled to a 30-day cure period, rather than merely 30 days' notice of intent, as claimed by Seller. They first note section 9—102 which states in pertinent part that a forcible entry and detainer action may be maintained "[w]hen a vendee having obtained possession under a written or verbal agreement to purchase lands or tenements, and having failed to comply with the agreement, withholds possession thereof, after demand in writing by the person entitled to such possession." (Ill. Rev. Stat. 1983, ch. 110, par. 9—102.) Buyers then look to section 9—104.1(a) of the Act to help determine what is necessary for a proper "demand" by one entitled to possession. According to section 9—104.1(a): "In case there is a contract for the purchase of such lands ***, the demand shall give the purchaser under such contract, *** at least 30 days to satisfy the terms of the demand before an action is filed." Ill. Rev. Stat. 1983, ch. 110, par. 9—104.1(a).

■ To decipher what is meant by the "terms of the demand,"

Buyers rely on a legal article regarding forfeiture of installment contracts which sets forth a model notice of intent to declare forfeiture. According to the author of the article, such notices should include language to the effect that unless a purchaser's defaults under the contract are cured by a date certain, the Seller intends to declare a forfeiture. (Hess, *Terminating Installment Contracts*, in Illinois Real Estate Litigation ch. 12, sec. 12.5 (Ill. Inst. for Cont. Legal Educ. 1984).) Buyers conclude that the 30-day demand provision of the Act is meant to give the buyer 30 days in which to cure. We find that Buyers have reached the correct conclusion and that Seller's insistence that the forfeiture and forcible entry notices are merely meant to give the buyer time to vacate, or an opportunity to request more time, is unfounded.

■ Although Seller acknowledges the notice requirements for both forfeiture and forcible entry actions, its argument on appeal concentrates on the common law forfeiture procedure. Seller maintains that when it gave notice of intent to declare a forfeiture, it had made an election of remedy and Buyers' rights were cut off. It is our judgment, however, that on the facts of this case the common law rules granted to Buyers a 30-day cure period after they received the Seller's notice. Where a Seller has accepted late performance, it may be found that he has waived or suspended his right to declare the contract forfeited, unless the Buyer is given a specific, written notice of the Seller's intent to require strict compliance with the contract from that time forward. (*Allabastro v. Wheaton National Bank* (1979), 77 Ill. App. 3d 359, 365, 395 N.E.2d 1212.) To revive the right to strict compliance, the notice must give a reasonable time for performance and 30 days is generally considered reasonable time. *Kirkpatrick v. Petreikis* (1976), 44 Ill. App. 3d 575, 577, 358 N.E.2d 679.

■■ ■ In the case before us, the trial court found that the Seller had from time to time accepted late mortgage payments, that Buyers had made late payments on taxes and insurance, and that certain exhibits showed that there were notices of cancellation of insurance. The court also noted that Seller had sent a letter to Buyers regarding the defaults in property tax payments. Since defendant has not provided to us a record of the evidentiary hearing on this matter, we will presume that the trial court heard evidence sufficient to support its findings. (*People v. Cranford* (1983), 119 Ill. App. 3d 226, 231, 456 N.E.2d 610.) Those findings show that Seller had, with full knowledge, accepted late performance from Buyers. Under the principles of *Allabastro v. Wheaton National Bank* (1979), 77 Ill. App. 3d 359, 395 N.E.2d 1221, Seller thus suspended its right to declare a forfeiture.

In order to reestablish its right to strict compliance, Seller had to allow Buyers a reasonable time to fully perform. Thus, the notice of intent to declare forfeiture did not terminate the contract, as Seller argues. Rather it gave Buyers 30 days to cure and revived Seller's right to strict compliance in the future.

Even if Buyers had not had a time to cure under the common law, they surely had such time under the forcible entry and detainer statute. While the language of the statute relevant to installment contract buyers does not expressly state that the 30 days allowed to "satisfy the terms of the demand" means the defaulting buyer has 30 days in which to cure, that meaning is clearly inferred. Section 9—104.1(a) states, in its entirety:

> "In case there is a contract for the purchase of such lands or tenements or in case of condominium property, the demand shall give the purchaser under such contract, or to the condominium unit owner, as the case may be, at least 30 days to satisfy the terms of the demand before an action is filed. In case of a condominium unit, the demand shall set forth the amount claimed which must be paid within the time prescribed in the demand and the time period or periods when the amounts were originally due. The demand shall be signed by the person claiming such possession, his or her agent, or attorney." (Ill. Rev. Stat. 1983, ch. 110, par. 9—104.1(a).)

The description of what must be included in a demand for a condominium leaves no doubt that it is more than a mere demand for possession. Since it must set forth "the amount claimed which must be paid within the time prescribed in the demand" this "demand" obviously contemplates the right to cure. There is no reason to believe the legislature intended less for installment contract purchasers. They, too, are given 30 days in which to cure or satisfy the terms of the demand.

Furthermore, the very precise requirements for service of the demand, also set forth in the statute, indicate an intent to allow a Buyer to cure. Section 9—104.1(b) calls for the demand to be served either personally upon the purchaser or by sending it registered or certified mail with return receipt requested to the purchaser's last known address or by posting it on the premises. (Ill. Rev. Stat. 1983, ch. 110, par. 9—104.1(b).) It is most unlikely the legislature would have included such elaborate service requirements if the demand was *only* a demand for possession, notifying the possessor that he had to vacate. These service procedures are designed to ensure notice if at all possible. The most reasonable explanation for such care by the legislature

is that it intended for the buyer to be fully aware of the default alleged by the seller and to have a final period in which to cure before a loss of possession.

Seller asserts that if notice of intent to declare a forfeiture activates a 30-day period to cure a breach, both the provision for redemption in the Act, and the contract provision requiring timely performance by the buyer, are rendered meaningless. According to Seller, a buyer could repudiate his contractual obligations at will. Seller is inaccurate in regard to both provisions.

As explained above, the notice-of-forfeiture requirement becomes applicable in order to revive a seller's right to strict compliance in the future. Presumably, if a seller has not waived that right by accepting late performance, no revival is necessary, and the Seller may declare a forfeiture. Thus, the duty of timely performance retains its significance.

If the Seller must pursue a forcible entry action, the statute both imposes the initial requirement of 30 days' notice and allows the trial court to order a stay of judgment, thus giving the purchaser a chance to redeem. Since the statute itself makes such favorable provisions for defaulting buyers, it must be concluded that the legislature intended for buyers to have the maximum opportunity, both before and after forcible entry proceedings have been initiated, to protect whatever interests they have acquired under the contract. Accordingly, it cannot be said that allowing a buyer to cure deprives the redemption provision of meaning.

■ Seller also claims that the forcible entry statute had not become applicable at the time Buyers filed the instant action and should not be a consideration here. Seller is correct regarding the applicability of the statute, but *only insofar as* a forcible entry and detainer suit had not yet actually been filed. That a complaint had not been formally filed, however, is irrelevant to Buyers' right to cure. The statute says that a forcible entry and detainer action may be maintained against a defaulting contract purchaser when such a purchaser withholds possession after a written demand by the rightful possessor. The demand must give the party in default 30 days to satisfy the terms of the demand. As we have already shown, the 30 days is meant as a cure period. In this case, Seller served his demand for possession on Buyers on March 18, 1985, the same day he served the declaration of forfeiture. The demand warned that failure to surrender possession would result in the filing of a suit against Buyers in forcible entry and detainer. It did not allege any defaults by Buyers or set forth any terms to be met by Buyers. Nevertheless, as a matter of

law, Buyers had 30 days after receipt of the demand to cure. It was the demand, not the filing of suit, that triggered the grace period. The time to cure was relevant to a forcible entry action only in the sense that such an action could not proceed without the 30-day demand.

In summary, under either the common law or the statute, Buyers had 30 days to cure defaults under the installment contract. Their common law cure period began when they received the Seller's notice of intent to declare forfeiture. The statutory time began when they were served with Seller's demand for possession.

Seller's second argument, in essence, is that the trial court erred in denying its motion to dissolve and dismiss the temporary restraining order which the court had previously imposed. Seller's motion asserted that the complaint did not adequately state a basis for injunctive relief. The trial court, however, found to the contrary and, once again, we agree with the court below.

■ It is well settled that equity may enjoin the prosecution of a forcible entry and detainer suit where resolution of the issues in the equity suit is necessary to the determination of the rights of the parties, and a party seeking such injunctive relief is not limited to asserting his claim as an equitable defense in the forcible entry and detainer action. (*Venturi v. Bulk Petroleum Corp.* (1979), 70 Ill. App. 3d 967, 971, 388 N.E.2d 1147; *Bartelstein v. Goodman* (1950), 340 Ill. App. 51, 90 N.E.2d 796.) In the case at bar, the issue is whether or not Buyers had up to 30 days after receipt of notice in which to cure defaults. The resolution of this issue is determinative of whether or not Buyers were in breach of their contract with Seller at the end of 30 days. If Buyers were not in breach, then Seller had no right to possession of the premises, while Buyers' possessory rights remained intact. Thus, resolution of the 30-day cure issue was necessary to a determination of the rights of the parties. The court properly entertained Buyers' action for injunctive relief.

■ Moreover, the allegations of Buyers' complaint met the requisites for injunctive relief. An applicant for injunctive relief must show that he has a clear and certain right in need of protection, that he will be irreparably harmed if relief is not granted, that his remedies at law are inadequate, and that he is likely to be successful on the merits of his action. (*People ex rel. Hartigan v. Stianos* (1985), 131 Ill. App. 3d 575, 579, 475 N.E.2d 1024; *Madigan Brothers, Inc. v. Melrose Shopping Center Co.* (1984), 130 Ill. App. 3d 149, 151, 474 N.E.2d 383.) In the case now before us, plaintiffs alleged that they had cured the asserted breaches of contract within 30 days of receipt of defend-

ant's notice of intent to declare a forfeiture. Since we have concluded that plaintiffs were entitled to a 30-day cure period, plaintiffs' complaint alleged a clear and certain right to continued possession of the property as against defendant's attempt to regain possession by declaring a forfeiture and pursuing a forcible entry and detainer action.

■ Plaintiffs also adequately alleged that they would be irreparably harmed if injunctive relief was not granted. They claimed that Seller's legal action would seriously disrupt the valuable stable business which they had successfully operated on the property since 1979. It is not unreasonable to conclude that the threat to plaintiffs' possession from a forcible entry and detainer action could not only cause specific clients to look elsewhere for stable services, but could also damage the reputation of the business. An averment of loss of business alone is sufficient allegation of irreparable injury to establish a right to injunctive relief. *SSA Foods, Inc. v. Giannotti* (1982), 105 Ill. App. 3d 424, 428, 434 N.E.2d 460.

■ Inadequacy of plaintiffs' legal remedy was sufficiently alleged by the complaint as a whole. A legal remedy will be adequate only where it is clear, complete, and as practical and efficient in achieving the prompt administration of justice as the equitable remedy. (*City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 314, 438 N.E.2d 159.) Here, Buyers claimed that Seller had already declared their rights under the contract to be forfeited and extinguished. They further alleged their fear that Seller would initiate a forcible entry and detainer action for possession of the property, thus disrupting their business. Had Seller been permitted to initiate such a suit, Buyers' business would have been simultaneously subjected to injury, and Buyers would have been unable to stop the course of that injury during the entire pendency of the suit. In contrast, the equity remedy prevented the harm from occurring in the first place. Thus, the legal remedy was not as practical and efficient in securing justice as was the equitable remedy and could not be deemed adequate. 91 Ill. 2d 295, 314, 438 N.E.2d 159.

Plaintiffs' allegations, assuming they could be proved, showed that Buyers were likely to be successful on the merits of the case. Buyers' allegations of a clear and certain right to possession, together with the alleged threat by Seller to seek Buyers' ouster from possession, left little doubt that, if the claims were proved, Seller's forfeiture and forcible entry action would be permanently enjoined.

Since plaintiffs sufficiently alleged all matters which must be shown in order to secure injunctive relief, the trial court correctly denied Seller's motion to dissolve the temporary restraining order. *Peo-*

*ple ex rel. Hartigan v. Stianos* (1985), 131 Ill. App. 3d 575, 579, 475 N.E.2d 1024.

In accordance with the views expressed above, the order of the circuit court of Lake County enjoining pertinent activities by Seller in relation to the subject property, and ordering Seller to accept the payments tendered by Buyer for the purpose of curing defaults under the contract, is affirmed.

Affirmed.

LINDBERG, P.J., and UNVERZAGT, J., concur.